FILED
'15 JAN -6 AM 11:42
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
np DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

TERRANCE ALLAN VANN, an Individual, On Behalf of Himself and All Others Similarly Situated,

Plaintiff,

vs.

MASSAGE ENVY FRANCHISING LLC, an Arizona Limited Liability Corporation, et al.,

Defendants.

CASE NO. 13-CV-2221-BEN (WVG)

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

[Docket No. 41]

Before this Court is a Motion for Summary Judgment, filed by Defendant Massage Envy Franchising, LLC ("MEF"). (Docket No. 41). Plaintiff Terrance Allan Vann filed a Response in Opposition. (Docket No. 60). Having carefully considered the Parties arguments, the Court finds and concludes as follows.

## BACKGROUND

### I. Procedural Background

Mr. Vann, a massage therapist who worked at various Massage Envy spa locations, filed this class-action complaint against Defendants MEF, Charis Group, LLC, and OC Wellness Group, Inc.,[1] alleging violations of California's minimum-wage laws. (Docket No. 1, Ex. B). Defendant MEF is the franchisor, and Defendants Charis Group, LLC and OC Wellness Group, Inc. are franchisees.

[1]Incorrectly sued as "OC Envy Group, Inc."

On September 16, 2013, the action was removed to this Court. (Docket No. 1). On March 3, 2014, the Parties agreed to dismiss all claims against OC Wellness Group, Inc. (Docket Nos. 23, 24). The action against Defendant Charis Group, LLC was stayed in light of its recent filing for bankruptcy. (Docket No. 69).

**II. Factual Background**

The following factual background is drawn from the evidence submitted by the Parties, from which the Court finds there are no genuine issues of material fact in dispute.

A. Massage Envy Franchising

MEF is a "business format franchisor"[2] headquartered in Scottsdale, Arizona. (Mot. 3). MEF grants licenses to independently owned and operated entities to use the Massage Envy name, trademark, and standardized business operations in exchange for paying a franchise fee. (*Id.*) Each of MEF's more than 900 locations nationwide offers customers a uniform experience of convenient, affordable, and quality massages. (Opp'n 3). MEF operates a website which provides service information and lists job opportunities at its various franchised locations. (*Id.*)

On November 14, 2006, Defendants MEF and Charis Group entered into a Franchise Agreement. (Mot., Decl. of Melanie Hansen ("Hansen Decl."), Ex. 1). MEF provided franchisee Charis Group with an Operations Manual that "contain[ed] mandatory and suggested specifications, standards, operating procedures and rules that [MEF] periodically prescribe[s] for operating a [franchise]." (*Id.* at 14). Pursuant to the Franchise Agreement, any personnel policies or procedures made available in the Operations Manual were "for [the franchisee's] optional use and are not mandatory."

---

[2]A business format franchisor applies the following model:

> [T]he franchisee pays royalties and fees for the right to sell products or services under the franchisor's name and trademark. In the process, the franchisee also acquires a business plan, which the franchisor has crafted for all of its stores. This business plan requires the franchisee to follow a system of standards and procedures.

*Patterson v. Domino's Pizza, LLC*, 60 Cal. 4th 474, 489 (2014) (citations omitted).

(*Id.*)

The 2014 version of the Operations Manual was the first version of the Manual that included any information about a pay policy. (Opp'n, Decl. of Jeff Geraci ("Geraci Decl."), Ex. F at 5). The 2014 Operations Manual provided, "Franchisees are responsible for hiring, managing and compensating their employees within the law and are encouraged to consult their own legal counsel to ensure their compliance with all applicable laws." (Geraci Decl., Ex. J at 2). The Operations Manual notes that California has more stringent rules regarding piece-rate payments. (*Id.* at 8). It urges franchisees who intend to implement a piece-rate pay policy to consult with legal counsel. (*Id.* at 8-9).

The Franchise Agreement states that it is the franchisee's responsibility to determine whether any suggested personnel policies are applicable in the franchisee's jurisdiction. (Hansen Decl., Ex. 1 at 14). It goes on, "You [Charis Group] and we [MEF] recognize that we neither dictate nor control labor and employment matters for you and your employees." (*Id.*) The Franchise Agreement also explicitly defined the relationship between Charis Group and MEF. It stated that Charis Group was an independent contractor, and had "no authority, express or implied, to act as agent of [MEF]." (*Id.* at 41). By way of the Agreement, the Defendants agreed that they did not intend to be "partners, associates, or joint employers in any way." (*Id.*) The Franchise Agreement further stated, "[MEF has] no relationship with [Charis Group] employees . . . ." (*Id.*)

Defendant MEF required Charis Group, and all other franchise owners to use a particular computer system. The Franchise Disclosure Document states, "You must obtain the Computer System, software licenses, maintenance and support services, and other services related to the Computer System from the suppliers we specify. . . ." (Hansen Decl., Ex. 8). The Franchise Disclosure Document also specified that the required software was the "Millennium Software." (Hansen Decl., Exs. 8-13). Its purpose was to "generate and/or store member, accounting, and point of sale

information." (Hansen Decl., Ex. 8).

MEF enlists regional developers to recruit potential franchisees and assist in opening new franchises. (Geraci Decl., Ex. E at 3). Regional developers receive a portion of the franchise fee and a portion of the royalties for their services.

In addition to the computer system, MEF requires franchise owners to conform to other MEF standards. MEF requires that franchise owners perform mandatory background checks of potential massage therapists using Universal Background Screening. (Geraci Decl., Ex. G at 4). They were not required to perform background checks on sales associates, although it was recommended. (*Id.* at 5). Also, MEF implements standard business hours for all franchise locations. MEF allows the regional director to choose a color scheme for employee attire. MEF also has a sample script for massage therapists to use when interacting with clients and guests. MEF only allows certain types of massage, and prohibits the use of scented oils.

B. Mr. Vann's Employment

Mr. Vann worked as a massage therapist at a Massage Envy franchise in Brea, California ("Spa Brea"), which was owned by OC Wellness Group. (Mot. 10). Mr. Vann only worked at Spa Brea for a few days in January 2011. He applied directly to the clinic administrator of Spa Brea via an advertisement on Craigslist. (Def.'s Reply, Supplemental Decl. of Hope Anne Case, Ex. 14). Mr. Vann was interviewed and hired by someone named Megan, an employee at Spa Brea. (Decl. of Hope Anne Case ("Case Decl."), Ex. 3). During the interview, Mr. Vann was told he would be paid "hourly plus commission." (*Id.*) Mr. Vann's one and only paycheck from Spa Brea was written by OC Wellness Group and paid an hourly rate (for the hours he was clocked in), plus commission (for the hours he performed massages) and tips. Mr. Vann agreed that he was paid appropriately for his time at Spa Brea.

In May 2011, Mr. Vann went to work for the Massage Envy franchise in Chula Vista, California ("Spa Chula Vista"), which was owned by Charis Group. Mr. Vann agreed that his pre-employment contact regarding a massage therapist position at Spa

Chula Vista was with Cynthia Tovar, its clinic administrator. (Case Decl., Ex. 3 at 62). Ms. Tovar interviewed Vann, and extended him a verbal offer of employment. Mr. Vann was informed he would be paid "hourly versus commission," which meant that Mr. Vann would be paid either minimum wage for all the hours clocked in during a pay period, or $15 per hour for each hour he performed massages during the pay period, whichever was greater. (*Id.* at 63-64). Ms. Tovar also communicated Mr. Vann's work schedule to him; and, either she or her assistant would review his requests for days off. (*Id.* at 71-72). All of Mr. Vann's performance reviews and disciplinary records are signed by either Ms. Tovar, or her assistant. (Case Decl., Ex. 10-13). All of the paychecks Mr. Vann received for his work at Spa Chula Vista were written by Charis Group. (Case Decl., Ex. 4).

Mr. Vann acknowledged that he received an Employee Handbook, which described policies imposed by ADP Total Source[3] and the "work site employer"—Charis Group. (Case Decl., Ex. 8). Mr. Vann's responsibilities at Spa Chula Vista were different from those at Spa Brea. Mr. Vann had to dust, vacuum, and do laundry among other things at Spa Chula Vista. (Case Decl., Ex. 3 at 55). Mr. Vann also claims that he was not compensated for meetings he was required to attend while working at Spa Chula Vista.

Mr. Vann presented testimonies of five other MEF franchise employees to support his argument that MEF implemented a uniform pay policy. First, Erika Calderon testified that she was paid either hourly or commission, whichever was greater, at a MEF franchise in Wildomar, California ("Spa Wildomar"). (Opp'n, Decl. of Erika Calderon). In October 2013, Spa Wildomar changed its pay policy to "hourly plus commission." (*Id.*)

Second, Monica Estrada testified that she currently works at Spa Wildomar and claims that a new pay policy took effect on July 1, 2014. (Opp'n, Decl. of Monica

---

[3] Automated Data Processing, Inc., the company hired by Charis Group to manage employee payment records at Spa Chula Vista.

Estrada). Before July 1, 2014, Ms. Estrada was paid $15 for each hour she performed massages, or $8 per hour that she was clocked in during the pay period, whichever was greater. (*Id.*) Since July 1, Ms. Estrada was paid $9 per hour she was clocked in, plus an additional $6 per hour for those hours she performed massages. (*Id.*)

Third, Toby O'Dell testified that he worked at a franchise location in Escondido, California ("Spa Escondido") until November 1, 2013. (Opp'n, Decl. of Toby O'Dell). Mr. O'Dell was paid "hourly versus commission." (*Id.*)

Fourth, Garrett Love testified that he used to work at a MEF franchise in Escondido, California, but currently works at a franchise in Corona, California ("Spa Corona"). (Opp'n, Decl. of Garrett Love). Spa Corona paid Mr. Love "hourly versus commission" until January 1, 2014. (*Id.* at 2). As of January 1, Love was paid $9 per hour he was clocked-in plus a "service bonus" of $2.75 for the hours he performed massages. (*Id.*)

Finally, Rachel Ogren testified that between 2008 and 2013 she worked for three different MEF franchise locations in northern California. (Opp'n, Decl. of Rachel Ogren). Ms. Ogren was paid "minimum wage versus commission." (*Id.*) She also testified that "one time," after a new payroll employee was hired, Ms. Ogren received a check that paid minimum wage plus commission. (*Id.* at 2). The following day, Ms. Ogren claimed that the franchise owner demanded the checks back. (*Id.*)

**STANDARD OF REVIEW**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In considering a summary judgment motion, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his or her favor. *Id.* at 255.

A moving party bears the initial burden of showing there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). It can do so by negating an essential element of the non-moving party's case, or by showing that the

non-moving party failed to make a showing sufficient to establish an element essential to that party's case, and on which the party will bear the burden of proof at trial. *Id.* The burden then shifts to the non-moving party to show that there is a genuine issue for trial. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. As a general rule, the "mere existence of a scintilla of evidence" will be insufficient to raise a genuine issue of material fact; there must be evidence on which the jury could reasonably find for the non-moving party. *Id.* at 252.

A moving party is only entitled to summary judgment where it has shown that there are no genuine issues of material fact, even if the nonmoving party does not offer materials in support of its opposition. *Henry v. Gill Indus. Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). Summary judgment is inappropriate where the movant's papers are insufficient to support that motion or on their face reveal a genuine issue of material fact. *See id.*

**DISCUSSION**

**I. Mr. Vann's Rule 56(d) Request**

Mr. Vann requests the Court, in the event it does not deny MEF's Motion for Summary Judgement, to permit further discovery.

"If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). In making a Rule 56(d) motion, a party opposing summary judgment must make clear what information is sought and how it would preclude summary judgment." *Burnett v. Frayne*, No. C 09-04693, 2011 WL 5830339, at *1 (N.D. Cal. Nov. 18, 2011) (quoting *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998)). In a ruling on a Rule

56(d) motion, a district court considers: "whether the movant had sufficient opportunity to conduct discovery; whether the movant was diligent; whether the information sought is based on mere speculation; and whether allowing additional discovery would preclude summary judgment." *Martinez v. Columbia Sportswear USA Corp.*, 553 F. App'x 760, 761 (9th Cir. 2014) (citations omitted).

Mr. Vann failed to meet his burden of showing that additional discovery would reveal specific facts precluding summary judgment. He claimed that through limited discovery, he learned "of additional information that is likely to controvert the positions taken by Massage Envy." (Opp'n 19). However, Mr. Vann did not allege what the "additional information" was, or what specific facts he believes further discovery will uncover.

Mr. Vann argued that because he was only permitted five requests for admissions, nine document requests, five interrogatories, and a deposition notice as to MEF, he should be permitted further discovery. Specifically, Mr. Vann requests additional discovery of Andrea Rivera, Massage Envy Director of Training; the four owners of Charis Group; the current owner of Charis Group; Dennis Conklin, Regional Developer for San Diego; and depositions of two current or former franchise owners. But, in addition to discovery of MEF, Mr. Vann was also permitted discovery of Charis Group. (See Order Regarding Discovery, Docket No. 28). Further, the number of requests of Charis Group was not limited like that of MEF. It is evident then, that Mr. Vann had the opportunity to gain the information he now seeks.

The Court therefore **DENIES** Mr. Vann's Motion for Further Discovery.

## II. MEF's Motion for Summary Judgment

### A. Evidentiary Objections

Mr. Vann objects to portions of Melanie Hansen's and Jordan Levine's Declarations. Defendant objects to portions of Jeff Geraci's, Terrance Allan Vann's, Erika Calderon's, Monica Estrada's, Toby O'Dell's, Garrett Love's, and Rachel Ogren's Declarations, and to characterizations in Vann's Opposition.

In connection with a motion for summary judgment, courts focus on the admissibility of the evidence's content rather than its form. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). Where material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence, a party is permitted to object. Fed. R. Civ. P. 56(c)(2). Affidavits or declarations used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4).

Here, the Parties demand of each other that they go beyond what is required for a declaration or an attachment thereto. The declarants have personal knowledge of the items or topics they seek to testify to due to their various professional capacities. Thus, the Court **OVERRULES** both Plaintiff's and Defendant's Objections.

B. Burden of Proof

Providing no authority in support, Plaintiff argues that Defendant has not met its burden because it did not present evidence covering the entire class period. The Court disagrees. Evidence that spans the duration that Mr. Vann worked for MEF franchisees is sufficient to support MEF's Motion. *See Lierboe v. State Farm Mut. Auto Ins. Co.*, 350 F.3d 1018, 1022-23 (9th Cir. 2003).

C. MEF's Relationship to Mr. Vann

Defendant MEF filed the instant Motion arguing that, as franchisor, MEF is not an employer of Mr. Vann and cannot be liable for any wage and hour violations made by a franchisee. (Mot. 1-2).

*1. Legal Standard*

Under California Labor Code section 1194, an employee who received less than the legal minimum wage is entitled to recover the unpaid balance. Only an employer has a duty to pay wages. *Martinez v. Combs*, 49 Cal. 4th 35, 49 (2010). In section 1194 actions, California Industrial Welfare Commission Wage Orders define the employment relationship. *Id.* at 52, 66.

"Employer" is defined as "any person . . . who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person." Cal. Code Regs. tit. 8, § 11020(2)(F). A "person" is any "person, association, organization, partnership, business trust, limited liability company, or corporation." Cal. Lab. Code § 18. The California Supreme Court interpreted the Wage Order[4] to define "employer" in three ways—as one who exercises the ability "(a) to exercise control over the wages, hours or working conditions, or (b) to suffer or permit to work, or (c) to engage, thereby creating a common law employment relationship." *Ford v. Yasuda*, No. 13-1961, 2014 U.S. Dist. LEXIS 109540, at *12-13 (C.D. Cal. July 30, 2014) (quoting *Martinez*, 49 Cal. 4th at 64).

California courts analyze the employment relationship between franchisors, franchisees, and employees under an agency theory. *See Kuchta v. Allied Builders Corp.*, 21 Cal. App. 3d 541, 547 (4th Dist. 1971) ("In the field of franchise agreements, the question of whether the franchisee is an independent contractor or an agent is ordinarily one of fact, depending on whether the franchisor exercises complete or substantial control over the franchisee."). It is apparent that franchisors set "comprehensive and meticulous standards" to ensure uniformity among their franchises. *Patterson v. Domino's Pizza, LLC*, 60 Cal. 4th 474, 478 (2014). As the business of franchising grows, the application of those theories must adapt. *Id.* "A franchisor will be liable [as an employer] if it has retained or assumed the right of general control over the *relevant* day-to-day operations at its franchised locations . . . ." *Id.* at 503 (emphasis added).

///

///

[4]The court specifically interpreted Wage Order No. 14, Cal. Code Regs., tit. 8, 11140(2)(C)(F). Wage Order No. 2, Cal. Code Regs., tit. 8, 11020(2)(F), is applicable in the instant case. Because both Wage Order No. 14 and No. 2 use identical definitions of "employer," applying the *Martinez* court's interpretation is appropriate to determine whether MEF is an employer. *See Ford v. Yasuda*, No. 13-1961, 2014 U.S. Dist. LEXIS 109540, at *13 (C.D. Cal. July 30, 2014).

*2. Analysis*

Plaintiff argues that disputes of material fact exist regarding MEF's status as an employer. Plaintiff claims that multiple Massage Envy franchises use the same or similar payment policy, which supports his argument that MEF implemented the policy and MEF controlled Mr. Vann's wages, hours, and working conditions.

In the most recent decision on the topic, the California Supreme Court held that Domino's Pizza franchisor was not liable to an employee for the sexual harassment she endured by a supervisor at the franchised location. *Patterson*, 60 Cal. 4th at 503. Although *Patterson* dealt with a franchisor's liability for torts committed by the franchisee's employees, the court's analysis is helpful here. The record revealed that Domino's implemented a number of policies concerning appropriate attire and pizza-making, and even employed regional directors to check in on the franchises to ensure they were following Domino's policies. *Id.* at 502-03. In spite of this, the court concluded Domino's could not be liable for the supervisor's sexual harassment of another employee because it was not within Domino's authority to hire, fire, or train the supervisor—or any of the franchisee's employees for that matter. *Id.*

Mr. Vann presented undisputed testimonies of payment practices at MEF franchises throughout California. The same evidence that supports Mr. Vann's argument that a uniform pay policy exists, however, also negates it. Ms. Calderon, Ms. Estrada, Mr. O'Dell, Mr. Love, and Ms. Ogren all testified that they were either a current or past employee of an MEF franchise, and were paid "hourly versus commission." Spa Wildomar changed its pay policy in October 2013 and July 2014. Spa Corona changed it policy on January 1, 2014. There is no evidence that Spa Escondido or the northern California locations changed their pay policy at all. In addition, the two locations that did change their policies, did so at different times, and the new policy at Spa Wildomar was different from the new policy at Spa Corona. One paid $9 per hour that the employee was clocked in and $15 per hour for those hours the employee performed massages. The other paid $9 per hour that the employee was

clocked in, plus a service bonus of $2.75 per hour the employee performed massages. The lack of uniformity among these locations suggest that MEF did not control employee wages and hours but, rather, left the responsibility to the franchise owners.

Plaintiff argues MEF exercised control over the hiring and firing decisions at the franchise locations because MEF distributed the Operations Manual to franchise owners, a script governing conversations between employees and clients, and because MEF requires all massage therapists pass a background check. Based on the language of the Franchise Agreement between MEF and Charis Group, it appears that Charis Group possessed the exclusive right to control the hiring and firing decisions at Spa Chula Vista. In fact, Mr. Vann's deposition supports that conclusion. Mr. Vann testified that he never had any interactions with MEF, nor did any of the other franchise employees testify that they had any interactions with MEF. Mr. Vann further testified that it was the clinic administrator of Spa Chula Vista who hired and fired him, that Charis Group signed his pay checks, and that his daily work schedule and assignments were handed down from the clinic administrator or her assistant. No evidence indicates that MEF exercised any involvement with the terms of Mr. Vann's employment.

Further, Mr. Vann argues that MEF's use of regional directors and its implementation of other workplace policies show that MEF exercised control of daily operations. The Court is not so persuaded. First, Mr. Vann presented no evidence that a regional director ever visited Spa Chula Vista while he was working, or that a regional director gave him instruction directly, or even that a regional director instructed the clinic administrator to do something. Assuming arguendo that a regional director did actively visit Spa Chula Vista, such activity does not rise to the level of exercising control over day-to-day operations. *See Patterson*, 60 Cal. 4th at 485 (finding no vicarious liability where an area leader and other inspectors visited the franchisee four times per year did not amount to control of daily operations).

MEF's policies on attire, the types of massages offered, what types of products could be used during a massage, and the types of conversations that should be had with

a client were policies to assist in brand uniformity. MEF is in the business of selling massages. Ensuring that a client can receive the same type of experience in California as she does in Texas is a necessary concern of franchisors. *See Patterson*, 60 Cal. 4th at 490 ("The [franchisor's] systemwide standards and controls provide a means of protecting the trademarked brand at great distances.").

There is also no evidence that MEF controlled the employees' work schedules. On the contrary, the only evidence presented revealed that the work schedules were created, managed, and distributed within the particular franchise location.

## CONCLUSION

Upon analysis of the foregoing, Mr. Vann's claims against MEF cannot proceed as a matter of law. MEF was not an employer or joint employer of Mr. Vann, and therefore, cannot be liabile for any wage violations committed by Charis Group. Finding no triable issues of material fact exist, MEF's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

Dated: January 05, 2015

HON. ROGER T. BENITEZ
United States District Judge